CHICAGO—FIRST DISTRICT—FEBRUARY, 1913.   473

First National Bank of Chicago v. O'Byrne, 177 Ill. App. 473.

The First National Bank of Chicago, v. Charles C. O'Byrne, Executor, and Clark S. Aubrey.

Charles C. O'Byrne, Executor, Appellant, v. Clark S. Aubrey, Appellee.

Gen. No. 16,924.

1. GIFTS—*causa mortis*. A gift *causa mortis*, to be valid, must be made in view of approaching death from an existing sickness or peril, and death must follow therefrom or while it is impending, and there must be delivery with the intention of passing title subject to revocation in case of recovery, and acceptance by the donee.

2. BANKS AND BANKING—*rights of depositor*. A bank is the debtor of the owner of a deposit and such owner has a right as against the bank to have checks drawn by him, not exceeding the amount of the deposit, paid immediately on presentment and without presentment of the bank book evidencing the deposit.

3. GIFTS—*checks*. It would seem that a check signed by the donor may be the subject of a valid gift.

4. GIFTS—*liability of donor of check*. Where a gift of a check is made the drawer is under no liability thereon, except to innocent holders for value, if the bank is insolvent when such check is delivered.

5. GIFTS—*when completely executed*. A gift *causa mortis* of a bank deposit is completely executed where the testator, having lost her bank book, draws a check for an amount larger than the fund to insure that the entire deposit may be secured by the donee, delivers the check, intending a delivery of the entire deposit as a gift, parts with all dominion over the deposit and surrenders it to the donee and dies of the then impending peril without revoking the gift.

6. BANKS AND BANKING—*assignment of deposit by check*. Though the Negotiable Instrument Act, §188, provides that a check of itself does not operate as an assignment of any part of the fund, and that the bank is not liable to the holder until it accepts or certifies the check, yet a valid assignment of the deposit or fund may be made by the drawer of a check to the payee.

7. GIFTS—*evidence*. Where a check was delivered as a gift *causa mortis*, the whole transaction between the parties is admissible along with the check to determine whether a valid assignment of the fund was made.

474 APPELLATE COURTS OF ILLINOIS.

First National Bank of Chicago v. O'Byrne, 177 Ill. App. 473.

8. GIFTS—*delivery.* Delivery of a gift *causa mortis* may be symbolical.

9. GIFTS—*evidence of delivery.* Less positive evidence is required to establish the delivery of a gift *causa mortis* to a relative than to persons not related, and slight evidence of delivery will suffice between relatives in the absence of a suggestion of fraud or undue influence.

10. BANKS AND BANKING—*assignment of deposit by check.* A check for the entire sum of a deposit is an assignment of the fund if so intended, though the bank has a rule that the fund can be withdrawn only on presentation of the depositor's bank book, and acceptance of the order by the bank is unnecessary.

11. BANKS AND BANKING—*evidence of assignment of deposit.* Parol evidence is admissible to show an assignment of a deposit by a check drawn for the entire amount of the fund.

12. GIFTS—*when delivery of check operates as assignment of bank deposit.* Where a check for a sum larger than the deposit is delivered as a gift *causa mortis* to insure that the entire fund may be secured by the donee, and the gift is fully executed, the delivery of the check operates as an assignment and delivery of the bank deposit to the donee as between the donor and donee.

Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed February 19, 1913. Rehearing denied March 3, 1913.

MORSE IVES, for appellant.

SYMMES & KIRKLAND, for appellee.

MR. PRESIDING JUSTICE DUNCAN delivered the opinion of the court.

The First National Bank of Chicago filed its bill of interpleader averring, in substance, that on November 14, 1908, there was standing on the books of said bank to the credit of Jessie S. Donley, $4,288.80, subject to her demand by check or otherwise; that on that date a check signed by Jessie S. Donley, November 13, 1908, for $5,000, to order of Clark Aubrey, and by him endorsed, was presented to it through the Chicago Clearing House for payment, and payment thereof denied by the bank, because in excess of the sum on deposit

by Jessie Donley, and that the check was marked, "Returned, not sufficient funds;" that on March 31 and April 7, 1909, respectively, Charles C. O'Bryne, as executor of the estate of Jessie S. Donley, deceased, and Clark Aubrey, made a demand upon the bank for said money; that said executor has commenced, and said Aubrey is threatening, suit against the bank to recover said money; and that the bank has at all times been willing to pay said sum to the person lawfully entitled thereto.

The executor answered and admitted the bill, and further averred that about November 13, 1908, Jessie S. Donley resided at Big Rapids, Michigan; that being about to die she then made and delivered her check for $5,000 on said bank to said Aubrey; that it was made and delivered in contemplation of her impending death without consideration and purely as a gift to said Aubrey; that the bank had no notice of the check before her death, but that the check was presented by Aubrey to it after her death, and it declined to pay the check or any part of it; and that respondent is the duly appointed and qualified executor of her estate in Cook County and in Michigan.

Clark S. Aubrey answered and admitted the bill, and further averred in his answer that Jessie S. Donley was his aunt, and that he and William E. Donley, her surviving husband, are her only next of kin; that on November 12, 1908, she requested him to come to Big Rapids, where she then was in a hospital, which he did; that on November 13, 1908, she wrote, signed and delivered to him said check in the words and figures following, to-wit:

"CHICAGO, Nov. 13, 1908.    No———
The First National Bank of Chicago, Pay to the order of Clark Aubrey, $5,000.00, Five Thousand Dollars.
JESSIE S. DONLEY."

That said check was intended to and did convey all of the funds in said bank to the respondent; that at the time said check was made and delivered the bank

book of said Jessie S. Donley had either been mislaid by her or had been secreted by said William E. Donley, and that said Jessie S. Donley drew said check for the sum of five thousand dollars, so that it might cover all her money then in said bank; that the check was meant and given as an assignment of all the fund which the said Jessie Donley then had in said bank; that at the time that said check was delivered to respondent it was meant to be a delivery to him of all the fund or money that said Jessie S. Donley then had in said bank; and that respondent is the said Clark Aubrey named in said check; and that said Jessie S. Donley at the time she signed said check believed, and was so informed by her doctor, that she was dying, and that she did die within three hours after the making of said check.

The court ordered and decreed that the bill of interpleader was properly filed and that complainant be dismissed with costs. Said cause was heard as to said executor, and Clark S. Aubrey upon the bill of interpleader confessed, and upon the said answers, and upon stipulations of the said respondents that said answers were substantially true. The court decreed that Clark S. Aubrey, appellee, was entitled to all of said bank fund or deposit, and directed that the said sum be paid to him. The executor prosecutes this appeal.

The parties to this controversy are agreed that the intent of the deceased, Jessie S. Donley, at the time she delivered the check in question, was by means of said check to transfer and deliver to appellee, Aubrey, all her funds or money that she then had in the First National Bank of Chicago, as a gift *causa mortis.* The contention of appellee is that she did thereby make a complete delivery of the fund in the bank as a gift *causa mortis,* while appellant insists that there was no sufficient delivery of the fund, and that the gift or attempted gift was of testamentary character and void, because not in compliance with the statute of wills.

The essentials of a gift *causa mortis* are: (1) The gift must be made in view of approaching death from some existing sickness or peril; (2) the donor must die from that sickness or peril, or while such sickness or peril is impending; and (3) there must be a delivery of the gift to the donee with the intention of passing title thereto, subject to revocation in the event of recovery from the impending illness or peril, and an acceptance by the donee. Varley v. Sims (Minn.) 8 L. R. A. (N. S.) 828; Ridden v. Thrall (N. Y.) 11 L. R. A. 684; Telford v. Patton, 144 Ill. 611.

The subject of the intended gift in this case is a bank fund or deposit, a chose in action, evidenced by a pass book or bank book delivered by the bank to Mrs. Donley at the time she made the deposit, and also evidenced by bank books kept by the bank. The bank was the debtor of Mrs. Donley, and the debt or the bank fund was subject to the demand of Mrs. Donley by check or otherwise. As she was the sole owner or party interested in the deposit, it was her right, as against the bank, to have any check or checks drawn by her, and not exceeding the amount of the deposit, paid by the bank to the payee immediately upon presentment to the bank, and without presentment to the bank of the bank book delivered to her evidencing her deposit. Munn v. Burch, 25 Ill. 35; Gage Hotel Co. v. Union Nat. Bank, 171 Ill. 531.

The check in question was delivered by Mrs. Donley to appellee as a transfer and assignment to Aubrey of the entire bank deposit. Its delivery was intended by her as a delivery to Aubrey of the entire deposit as a gift. Her bank books were lost, or at least she and her searchers could not find them at the time, and she never did find them or have them where she could produce them afterwards. She did all she could at that time to make a gift of the deposit. Because her bank book was lost or misplaced, she could not deliver it to Aubrey, and could not write a check for the exact amount of the deposit, but it was the exact amount of

the deposit that she intended to give him. She, therefore, made a check larger than the whole amount of the deposit to insure his getting the entire deposit. She knew he could not get more, and did not intend he should receive more, than the exact sum of the deposit. She died from the then impending peril without ever having attempted to recall or revoke her intended gift, and with the full belief that she had made a complete gift of the deposit to Aubrey. These facts are all admitted, or are necessary conclusions from the admitted facts. We are also warranted by the admitted facts in the further conclusions, we think, that Mrs. Donley intended to, and did in fact, part with all further dominion over the bank deposit, and surrendered the same to Aubrey. In other words, we think she completely executed a gift *causa mortis* of the bank fund by the delivery of the check to Aubrey, when all the other admitted facts in connection with the delivery of the check are considered. Mrs. Donley having died of the impending malady, with the gift at her death still in full force, her administrator is not entitled to the bank fund, there being no interests of creditors involved. Appellee acted promptly after he had accepted and received the check to have the same paid to him, and was only prevented from so doing by the bank, and for the sole reason that the check was drawn for more than the deposit. The sole question now, as to the right to the deposit, is between appellee, as the donee, and the administrator of the donor, Mrs. Donley. A gift *inter vivos* perfected by delivery of the thing given cannot be revoked. Pickslay v. Starr, 149 N. Y. 432.

So, after a gift *causa mortis* has been perfected by a delivery of the subject of the gift, and after the death of the donor from the threatened peril, with the gift unrevoked prior to the donor's death, the gift is not revoked by death of the donor, and his administrator cannot revoke it, or recover the thing given.

It is the well settled law that bank deposits subject to check and evidenced by entries in bank books, are subjects of valid gifts *causa mortis,* and that the delivery of such bank books to the donee by the donor, with or without endorsement and with the intent to make a gift and to surrender all control over the funds deposited, is sufficient to perfect a gift of such funds, if accepted or assented to by the donee, although the account or fund is not transferred to the donee on the bank books. It is the law, too, that certificates of deposit, checks, drafts, bills of exchange, and promissory notes signed by third parties and owned by a would-be donor are proper subjects of gifts *causa mortis,* and that such gifts may be perfected by the delivery thereof to the donee with or without endorsement. Ridden v. Thrall, *supra*; Caldwell v. Goodenough, 170 Mich. 114; State Bank of Croswell v. Johnson, 151 Mich. 538; Callahan v. Forest, 116 N. Y. Supp. 541; Weaterlo v. DeWitt, 36 N. Y. 339; Brown v. Brown, 18 Conn. 409.

The authorities generally hold that a promissory note signed by the donor to the donee and delivered to the donee as a gift is void, because it is merely the delivery of a promise to give instead of a delivery of the thing promised to be given. It has been held, apparently for the same reason, that a check signed by the donor and delivered to the donee is void; that is to say, that it is not the subject of a valid gift. We do not regard the reasoning for such holding as sound and think that the modern descisions do not sustain it. Is a check a promise to pay in the sense that a promissory note is? Is there or was there any mere promise to pay Aubrey any sum of money by Mrs. Donley, as expressed in the check in question? We certainly think not. That check, within itself, as well as all other checks, simply amounts to authority to the payee to draw the sum mentioned therein from the bank and a direction to the bank by the drawer to pay that sum to the payee. There would have been only a secondary liability upon her part to pay the check, that is, a lia-

bility to pay in case the bank did not pay it, if there had been a valuable consideration for the check. As it was, there would have been no liability whatever on her part on that check had the bank been absolutely insolvent when the check was delivered, except to innocent holders for value. In making a gift the donor simply divests himself of the title to the thing given, and invests the donee with the title thereto. The donor does not pretend to warrant the title, nor the article given, and is not liable to the donee, if either the article or the title thereto is worthless, and the law does not impose any such liability. This is true whether the intended gift be a chattel or a chose in action, and because there is no consideration therefor. Suppose Mrs. Donley, instead of writing this check, simply had found her bank book and had written and signed therein this order or endorsement: ''Pay all of my deposit in your bank to Mr. Aubrey,'' and had then delivered the book with the endorsement to appellee. If delivered as a gift, all the authorities will agree that the delivery was complete. The order or endorsement in the book would have been of the identical same character as the check that was delivered to Aubrey, a direction to the bank to pay the deposit to appellee and a power or warrant to appellee to receive it. So, if the donor had delivered her bank book alone to appellee with intent to give him the deposit, delivery would have been complete by all the authorities, and the same order or the substance of it in the book or with it, would have been considered as having been given by the donor by implication. Yet, the endorsement in the book, the check, or the book itself, or all of them combined, are not the thing she sought to give appellee. If a delivery at all is to be considered as made in any one of those instances, it must necessarily be a constructive or symbolical delivery. The intent of the parties must necessarily determine the question of delivery in any one of the cases. So, the real question in this case is on the question of delivery of the bank

deposit or fund, and the mere fact that the subject of the gift was attempted to be passed by Mrs. Donley's personal check should not end the inquiry as to delivery, and particularly when it is agreed that the check itself was not the thing attempted to be given, but was executed and delivered as a transfer or delivery of the bank fund to Aubrey and by him was negotiated. It must be apparent that if in any case a check is delivered as a transfer and delivery of a bank fund and as a gift, and the gift is invalid, because of an insufficient delivery, it is because the donor cannot or did not make a delivery of the bank fund by his check, so as to surrender and divest himself of all right and dominion over the subject of the gift, and not because the check is a promise to pay or to make a gift by the donor.

All she had to do to make a valid assignment, even by way of a gift, was to deliver the subject of the gift to appellee, so as to part with all dominion and control over the same, and to invest appellee with the title to the same. The assent of the bank to such an assignment or transfer was not necessary. It is conceded that she could make the assignment and delivery by merely delivering her bank book under the same circumstances and with the same intent that she delivered the check. Delivery of a bank book would be merely a constructive or symbolical delivery of the debt or deposit, because the book is not the debt or fund that she was seeking to deliver. An actual, complete delivery of the fund on deposit could not have been made until the banker had assented to the transfer, and had either paid the check or transferred the account on the bank books to appellee. If a symbolical or constructive delivery can be made at all of a sum on deposit, we see no valid reason for holding that the delivery of the fund may not be made by the delivery of a check or order for the whole sum of the deposit as a delivery of the fund, as between drawer and payee, and without the assent or acceptance of the drawee,

482     APPELLATE COURTS OF ILLINOIS.

First National Bank of Chicago v. O'Byrne, 177 Ill. App. 473.

and particularly where the drawer has lost or cannot produce his bank book. We may say that under our present negotiable instrument act it is the law that a check would not bind the drawee to pay it to the payee, until accepted by the drawee, in any case where the right of the payee was in question. Still, we see no reason why section 188 of that act should be construed as interfering with the right of the drawer of a check to make an assignment of his bank deposit, as between him and his payee. It merely provides that a check of itself does not operate as an assignment of any part of the fund and that the bank is not liable to the holder until it accepts or certifies the check. The whole transaction between the parties and all that was said and done is admissible along with the check to determine the question whether or not a valid assignment of the fund was made to appellee, and we find that that transaction did not merely consist of drawing and delivering the check. Notwithstanding the statute aforesaid, we think a valid assignment of the fund may be made by a drawer of a check to the payee. Hove v. Stanhope State Bank, 138 Iowa 39.

The question of delivery, essential to constitute a gift *causa mortis,* depends on the intention of the parties; and the test is did the donor by his act or words, or both, intend to divest himself of the custody and control of the article given, and place it wholly under the power of the donee, and, if he did, there is a sufficient delivery. The delivery may be actual or constructive, that is, symbolical. Scott v. Union & Planters' Bank & Trust Co., 123 Tenn. 258; State Bank of Croswell v. Johnson, 151 Mich. 538; Telford v. Patton, 144 Ill. 611.

It requires less positive and unequivocal testimony to establish the delivery of a gift *causa mortis* to a relative than to persons not related, and where there is no suggestion of fraud or undue influence, very slight evidence will suffice. Caldwell v. Goodenough, 170 Mich. 114.

A check drawn for the entire amount of the deposit is an assignment of the fund, if so intended, notwithstanding the bank's rule that the fund could not be withdrawn, except when the depositor's bank book was presented. It is not necessary that the drawee accept the order, and parole evidence is admissible to show an assignment. Dillman v. Carlin, 105 Wis. 14; Brem v. Covington, 104 N. C. 589; Moore v. Davis, 57 Mich. 251; Moore v. Gravelot, 3 Ill. App. 442.

While mere delivery of a check to a third person upon his debtor does not effect a legal transfer of the debt, yet, if the intent is such, it should be so held. Throop Grain Cleaner Co. v. Smith, 110 N. Y. 83; Walker v. Brown, 165 U. S. 654.

The question of whether or not there was a consideration for the check ought not of itself to settle the question of an assignment or transfer of the fund. More evidence perhaps should be required in any case to establish an assignment or a delivery of a bank deposit in the case of gifts, than in those cases where there is a valuable consideration moving, but we are not willing to subscribe to the doctrine that an assignment or a delivery of a bank deposit cannot be made in any case of an attempted gift by a check or order for the entire deposit. That bank deposits are the subjects of gifts *causa mortis* and that such gifts may be fully executed by means of the delivery of checks drawn by the donor on the bank and in favor of the donee, without acceptance or payment thereof or transfer of the account before tht donor's death by the bank is positively held in the following cases: Varley v. Sims (Minn.) 8 L. R. A. (N. S.) 828; Phinney v. State of Washington (Wash.) 68 L. R. A. 119; Weber v. Salisbury, 149 Ky. 327.

The delivery by a depositor of a check book and a power of attorney to her daughter to draw on the bank in the name of the depositor with intent to make a gift of the deposit to the daughter was held to be sufficient to perfect a gift of the deposit to the daughter against creditors, although the account remained on the bank

books in the name of the donor. Murphy v. Bordwell (Minn.) 52 L. R. A. 849. Extraneous evidence was held admissible to prove the gift.

On the question of constructive or symbolical delivery of bank deposits, we cite the cases of Scott v. Union & Planters Bank & Trust Co., *supra,* and Whitehouse v. Whitehouse, 90 Me. 468.

Courts are usually cautious in sustaining claims of gifts *causa mortis* and require them to be established by clear and convincing proof. Where, however, as in the case before us, there is no question as to the intent of the deceased to make such a gift, there is no just or legal reason why a court should not as readily sustain gift *causa mortis* as it would a devise by will, if all the requirements of the law to perfect such a gift have been met. We hold that the gift *causa mortis* in this case was fully executed by the donor, that the delivery of the check in question operated as an assignment or transfer and delivery of the bank deposit to appellee, as between him and Mrs. Donley, and that the gift was not revoked after the same was executed.

The judgment is, therefore, affirmed.

*Judgment affirmed.*